Case: 1:25-mc-00007
Assigned To : Boasberg, James E.
Assign. Date : 2/10/2025
Description: Misc.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF POLITICO LLC FOR ACCESS TO JUDICIAL RECORDS ANCILLARY TO CERTAIN GRAND JURY PROCEEDINGS CONCERNING KASHYAP PATEL | Case No. _____ <br><br> Chief Judge James E. Boasberg <br><br> Hearing Requested |

### APPLICATION OF POLITICO LLC FOR ACCESS TO JUDICIAL RECORDS
### ANCILLARY TO CERTAIN GRAND JURY PROCEEDINGS
### CONCERNING KASHYAP PATEL

Pursuant to Local Criminal Rules 57.6 and 6.1, POLITICO LLC ("Politico") respectfully moves the Court for access to all judicial records pertaining to the Government's motion to compel Kashyap ("Kash") Patel to comply with a grand jury subpoena that he received on or around September 19, 2022, as well as Patel's motion to quash and related court rulings.

As the Government has confirmed in public court records, Patel was subpoenaed to appear before the grand jury investigating President Donald J. Trump's handling of classified documents, Patel moved to quash the subpoena, the motion was denied, Patel appeared but refused to answer questions pursuant to the Fifth Amendment, the Government moved to compel his testimony, the Court granted the motion on the condition that Patel receive testimonial immunity, and Patel received immunity and testified a second time. *See, e.g.*, Dkt. No. 115-1 at 77, *United States v. Trump*, No. 9:23-cr-80101-AMC (S.D. Fla. Aug. 11, 2023). Patel has publicly acknowledged these events as well during his nationally televised confirmation hearings as President Trump's nominee for Director of the Federal Bureau of Investigation ("FBI"). *See FBI Director Nominee Kash Patel Testifies at Confirmation Hearing*, C-SPAN (Jan. 30, 2025), https://www.c-span.org/program/senate-committee/fbi-director-nominee-kash-patel-testifies-at-confirmation-hearing-part-2/655100 (video at 3:13-7:19).

RECEIVED

FEB 1 0 2025

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

While Federal Rule of Criminal Procedure 6(e) ordinarily restricts disclosure of "a matter occurring before the grand jury," Local Criminal Rule 6.1 provides for the filing under seal of all motions and associated papers and orders prepared "in connection with a grand jury subpoena or other matter occurring before a grand jury." Patel's acknowledgment of these unprecedented and historic proceedings warrant the unsealing of these judicial records. Indeed, the Local Rule provides for this precise circumstance, authorizing that such proceedings "may be made public by the Court on its own motion or on motion of any person upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury."

In various public court filings, the Government has officially acknowledged the grand jury investigation into President Trump's handling of classified documents, and Patel's role as a witness. Patel, in turn, has "virtually proclaimed from the rooftops" that he was subpoenaed to testify before that grand jury. *In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former Vice President Pence*, 678 F. Supp. 3d 135, 147 (D.D.C. 2023) (quoting *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 505 (D.C. Cir. 1998)). In these circumstances, continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury. The Court should therefore provide access to these judicial records with only those narrow redactions necessary to shield whatever factual material, if any, might still require protection from disclosure under Federal Criminal Rule 6(e) and Local Criminal Rule 6.1.

For the reasons set forth more fully in the accompanying Memorandum of Points and Authorities, Politico respectfully requests that the Court grant this application and unseal the requested materials. Politico further requests a hearing on this application, and given the D.C. Circuit's recognition of "the critical importance of *contemporaneous* access to [judicial records]

to the public's role as overseer of the criminal justice process," *see Washington Post v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991), Politico respectfully requests that the Court address this application in an expedited manner.

Dated: February 10, 2025          Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Maxwell S. Mishkin*
Maxwell S. Mishkin (#1031356)
Chad R. Bowman (#484150)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
mishkinm@ballardspahr.com
bowmanchad@ballardspahr.com

Sasha Dudding (#1735532)
1675 Broadway, 19th Floor
New York, NY 10019
Tel: (212) 223-0200
Fax: (212) 223-1942
duddings@ballardspahr.com

*Counsel for Petitioner POLITICO LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE APPLICATION OF POLITICO LLC
FOR ACCESS TO JUDICIAL RECORDS
ANCILLARY TO CERTAIN GRAND JURY
PROCEEDINGS CONCERNING
KASHYAP PATEL

Case No. _____

Chief Judge James E. Boasberg

Hearing Requested

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF POLITICO LLC'S APPLICATION FOR ACCESS TO JUDICIAL RECORDS ANCILLARY TO CERTAIN GRAND JURY PROCEEDINGS <u>CONCERNING KASHYAP PATEL</u>

BALLARD SPAHR LLP

Maxwell S. Mishkin (#1031356)
Chad R. Bowman (#484150)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
mishkinm@ballardspahr.com
bowmanchad@ballardspahr.com

Sasha Dudding (#1735532)
1675 Broadway, 19th Floor
New York, NY 10019
Tel: (212) 223-0200
Fax: (212) 223-1942
duddings@ballardspahr.com

*Counsel for Petitioner POLITICO LLC*

## PRELIMINARY STATEMENT

In this Application, POLITICO LLC ("Politico") respectfully seeks access to court

records related to a subpoena that directed Kashyap ("Kash") Patel – President Donald J.

Trump's nominee for Director of the FBI – to testify before the federal grand jury that was

investigating President Trump's handling of classified materials after his first term in office.

The Government has officially acknowledged this grand jury investigation and Patel has

publicly discussed it, including at his January 30, 2025 Senate confirmation hearing. President

Trump has also discussed the investigation and resulting indictment extensively, particularly the

FBI's August 8, 2022 raid of Mar-a-Lago, which led to the seizure of dozens of classified

documents. Due to the "intense public and historical interest in an unprecedented search of a

former President's residence," other records related to the investigation, including the search

warrant affidavit and grand jury testimony of President Trump's co-defendant Walt Nauta, have

already been unsealed. *In re Sealed Search Warrant*, 622 F. Supp. 3d 1257, 1265 (S.D. Fla.

2022). Under these circumstances, there is no reason to keep these judicial records secret.

Indeed, the public interest in these proceedings could not be greater given President

Trump's recent return to the White House and his nomination of Patel as FBI Director. If

appointed as FBI Director, Patel would be leading the very department that conducted the

investigation and executed the search warrant on Mar-a-Lago. Forbidding the press and public

from seeing these records for themselves thus violates the "foundational principle of American

law that judicial proceedings should be open to the public." *Id.* at 1260.

Politico now seeks to unseal the court records that have been publicly discussed by Patel

and in unsealed court filings: the grand jury subpoena, Patel's motion to quash that subpoena, the

Government's motion to compel Patel's testimony, any briefing in support or opposition and all

exhibits thereto, the transcript(s) of any hearing(s) on those motions, and any opinions or orders

the Court issued adjudicating the motions.  This request is expressly authorized under Local

Criminal Rule 6.1 and the controlling case law of this Circuit, which holds that "when once-

secret grand jury material becomes sufficiently widely known, it may lose its character as Rule

6(e) material."  *In re Grand Jury Proceedings (Miller)* ("*In re Judith Miller II*"), 493 F.3d 152,

154 (D.C. Cir. 2007) (cleaned up).

      This Court has discretion under Local Criminal Rule 6.1 to unseal the requested records

"upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring

before the grand jury."  L. Crim. R. 6.1.  "Once such a finding has been made, the Circuit has

instructed that 'where the Rules authorize [courts] to do so, [courts] may — and <u>should</u> —

release any information so long as it does not reveal' material that Rule 6(e)(6) protects."  *In re*

*Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning*

*Former Vice President Pence* ("*In re Pence*"), 678 F. Supp. 3d 135, 141 (D.D.C. 2023) (quoting

Order at 1, *In re Grand Jury Subpoena*, No. 18-3071 (D.C. Cir. Apr. 23, 2019) (per curiam)); *see*

*also In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499-500 (D.C. Cir. 1998)).

      Given the profound interest in these judicial records, the extensive public disclosures

about them, and the gravity of this dispute, Politico respectfully requests that the Court unseal all

judicial records related to this motion.  Narrow redactions can adequately address any concerns

the Government may raise about revealing information in these judicial records that are beyond

the immediate dispute between Patel and the Government.

## RELEVANT PUBLIC BACKGROUND

**A.**    **The Grand Jury Investigation of President Trump's Handling of**
        **Classified Material**

On the morning of August 8, 2022, FBI agents arrived at President Trump's home at

Mar-a-Lago and, over the course of several hours, executed a search warrant and seized dozens

of boxes of records. *See, e.g.*, Josh Gerstein & Kyle Cheney, *Trump Mar-a-Lago Affidavit Reveals 'Handwritten Notes,' Highly Classified Material Led to Warrant Request*, Politico (Aug. 26, 2022), https://www.politico.com/news/2022/08/26/trump-mar-a-lago-affidavit-release-00053944. The search was part of the FBI's investigation into President Trump's alleged mishandling of classified information, theft of government records, and obstruction of justice. *See* Gerstein & Cheney, *supra*; *see also* Affidavit ¶¶ 1, 47, Dkt. 189-1, *United States v. Sealed Search Warrant*, No. 9:22-mj-08332-BEE (S.D. Fla. May 1, 2024) ("Affidavit"). The investigation and search were the subject of intense public attention and press coverage. President Trump himself quickly confirmed the search, and he and his supporters, including Members of Congress, condemned the FBI's actions as a political "witch hunt." *See, e.g.*, Myah Ward, *Trump World's Shifting Narrative on the Mar-A-Lago Docs*, Politico (Aug. 15, 2022), https://www.politico.com/news/2022/08/15/trump-worlds-shifting-narrative-on-the-mar-a-lago-docs-00051935. The FBI soon learned that among the boxes seized from Mar-a-Lago were dozens more classified records. *See, e.g.*, United States' Resp. to Mot. for Jud. Oversight, Dkt. No. 48 at 12-13, *Trump v. United States*, No. 9:22-cv-81294-AMC (S.D. Fla. Aug. 30, 2022).

On June 8, 2023, President Trump became the first former U.S. President to be indicted on federal charges. *See* Indictment, Dkt. 3, *United States v. Trump*, No. 9:23-cr-80101-AMC (S.D. Fla. June 8, 2023). The indictment charged him with 37 counts related to the documents, including the willful retention of national defense information, corrupt concealment of the documents, obstruction of justice, and making false statements. *Id.* ¶¶ 76-96. The indictment stated that these classified documents "included information regarding defense and weapons capabilities of both the United States and foreign countries; United States nuclear programs; potential vulnerabilities of the United States and its allies to military attack; and plans for

possible retaliation in response to a foreign attack." *Id.* ¶ 3.  The government warned that "[t]he unauthorized disclosure of these classified documents could put at risk the national security of the United States, foreign relations, the safety of the United States military, and human sources and the continued viability of sensitive intelligence collection methods." *Id.*  President Trump had reportedly shown some of these classified documents to others twice in 2021, kept them scattered throughout Mar-a-Lago, including in a ballroom, bedroom, and bathroom, and tried to obstruct the government's investigation into the documents. *Id.* ¶¶ 5-7.

President Trump was arrested and arraigned five days later, pleading not guilty to all charges. *See* Minute Order, Dkt. 16, *United States v. Trump* (June 13, 2023).  A superseding indictment added three new charges on July 27. *See* Superseding Indictment, Dkt. 85, *United States v. Trump.*  On July 15, 2024, the court dismissed the superseding indictment, finding that the appointment of special counsel Jack Smith, who had been leading the government's case, violated the Appointments Clause of the U.S. Constitution. *See* Order, Dkt. 672, *United States v. Trump.*  In November, while the appeal was ongoing, President Trump was reelected as the 47th President of the United States.  The Special Counsel's Office subsequently moved to dismiss the appeal against President Trump, which the Eleventh Circuit granted. *See* Order, Dkt. 677, *United States v. Trump* (Nov. 26. 2024).  President Trump took office on January 20, 2025.

**B.    The Grand Jury Subpoena To Patel**

Patel's name was mentioned in connection with the documents investigation from the beginning.  The affidavit supporting the FBI's Mar-a-Lago search warrant cited a May 2022 Breitbart article, which reported that Patel, "who is described as a former top FPOTUS administration official, characterized as "misleading" reports in other news organizations that NARA had found classified materials among records that FPOTUS provided to NARA from

Mar-a-Lago," and that Patel "alleged that such reports were misleading because FPOTUS had declassified the materials at issue." Affidavit ¶ 53 (citing Kristina Wong, *Documents at Mar-a-Lago Marked 'Classified' Were Already Declassified, Kash Patel Says*, Breitbart (May 5, 2022), https://www.breitbart.com/politics/2022/05/05/documents-mar-a-lago-marked-classified-were-already-declassified-kash-patel-says); *see also* Gerstein & Cheney, *supra* (reporting on the affidavit's mention of Patel). Additionally, "Patel visited FPOTUS at" Mar-a-Lago "around the time the *Breitbart* article was published." Affidavit ¶ 53.

On September 19, 2022, according to the government's own publicly available court filings, the FBI served Patel with a grand jury subpoena in connection with this investigation, commanding his appearance ten days later. Dkt. No. 115-1 at 77, *United States v. Trump*. After a discussion with the government about timing, Patel filed a motion to quash on October 7, 2022. *Id.* at 78. The court denied the motion. *Id.* (citing Minute Order, *In re Grand Jury No. 22-03 Subpoena 63-13*, No. 22-gj-41 (Oct. 11, 2022)). Patel appeared before the grand jury on October 13, 2022, and repeatedly refused to answer questions pursuant to the Fifth Amendment. *Id.* The government filed a motion to compel Patel's testimony, which the court granted provided that Patel receive statutory immunity. *Id.* at 78-79. The government granted Patel immunity, and he testified on November 3, 2022. *Id.* at 80. These court filings remain under seal, though Patel's role is publicly known and has been the subject of extensive reporting. *See, e.g.*, Kyle Cheney & Josh Gerstein, *6 Reasons Why Trump's Already Bad Legal Troubles Are About to Get Worse*, Politico (Nov. 9, 2022), https://www.politico.com/news/2022/11/09/donald-trump-legal-troubles-00066097; Josh Gerstein & Kyle Cheney, *New Trump Special Counsel Launches Investigation in Mueller's Shadow*, Politico (Nov. 18, 2022), https://www.politico.com/news/2022/11/18/trump-special-counsel-investigation-mueller-00069578.

On November 30, 2024, after winning reelection, President Trump nominated Patel to the position of FBI Director. *See* Megan Messerly & Kyle Cheney, *Trump Picks Patel to Lead FBI,* Politico (Nov. 30, 2024), https://www.politico.com/news/2024/11/30/trump-kash-patel-fbi-director-nomination-transition-00192046. Patel's confirmation hearing before the Senate Judiciary Committee took place on January 30, 2025. *See* Hailey Fuchs & Kyle Cheney, *Kash Patel's Hearing, Expected To Produce Fireworks, Was Mostly A Dud*, Politico (Jan. 30, 2025), https://www.politico.com/news/2025/01/30/kash-patel-hearing-fbi-00201679. During that hearing, which aired nationally and was covered extensively, Patel was questioned about his role in the grand jury's investigation of the classified documents. *See id.*; Kyle Cheney, *Kash Patel Declines to Detail His Grand Jury Testimony in Trump Documents Case*, Politico (Jan. 30, 2025), https://www.politico.com/live-updates/2025/01/30/congress/kash-patel-grand-jury-testimony-00201585. Patel confirmed that he testified before the grand jury, had invoked the Fifth Amendment during his appearance, and that he was compelled to testify by court order. *See FBI Director Nominee Kash Patel Testifies at Confirmation Hearing*, C-SPAN (Jan. 30, 2025), https://www.c-span.org/program/senate-committee/fbi-director-nominee-kash-patel-testifies-at-confirmation-hearing-part-2/655100 (video at 3:13-7:19). Patel also claimed, incorrectly, that he was not allowed to discuss the specifics of his grand jury testimony, but he called on the Senate to "get my grand jury testimony, I want it made public." *Id.* at 5:00-7:00 ("I encourage you to get that transcript.").

## ARGUMENT

As President Trump assembles his new administration and begins his second term, the grand jury records related to Kash Patel, his nominee for FBI Director, are of significant public interest. The public would surely benefit from understanding how Patel responded to demands for his testimony about President Trump's handling of classified materials in assessing Patel's

nomination to lead the very department that conducted that investigation.  It is beyond dispute

that the public has a powerful interest in understanding Patel's role in these historic proceedings.

In these circumstances, federal grand jury secrecy rules do not stand in the way of

providing the public with this important information.  *Cf. Butterworth v. Smith*, 494 U.S. 624,

630 (1990) ("the invocation of grand jury interests is not some talisman that dissolves all

constitutional protections" (cleaned up)).[1]  Because this is a matter ancillary to a grand jury

proceeding, the justification for sealing extends only to those discrete portions of the record that

would reveal remaining secrets about "matters occurring before the grand jury."  L. Crim. R. 6.1.

The Court therefore can, and should, unseal the requested records with only those redactions

essential to protect the information, if any, that still remains secret before the grand jury.

## I.  THE COURT SHOULD RELEASE THE REQUESTED RECORDS BECAUSE THEY ARE NO LONGER PROTECTED BY GRAND JURY SECRECY RULES

### A.  The Court Has Discretion Under Local Rule 6.1 To Unseal Information In Ancillary Proceedings That Would Not Reveal Activities "Occurring Before The Grand Jury"

Rule 6(e) of the Federal Rules of Criminal Procedure "requires that '[r]ecords, orders,

and subpoenas related to grand-jury proceedings . . . be kept under seal' only 'to the extent and

as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand

jury.'"  *In re Capitol Breach Grand Jury Investigations*, 339 F.R.D. 1, 7 n.5 (D.D.C. 2021)

(Howell, C.J.) (quoting Fed. R. Crim. P. 6(e)(6)) (noting that filings "initially placed under seal"

---

[1] In *Butterworth*, the Supreme Court held that a state law prohibiting grand jury witnesses from publicly disclosing the testimony they had provided violates the First Amendment, noting that the Court must balance "First Amendment rights against [the state's] interest in preserving the confidentiality of its grand jury proceedings."  494 U.S. at 630-31.  Here, too, the interest in grand jury secrecy must be balanced against the value of "public access to records of a judicial proceeding," which, "[l]ike the First Amendment . . . produce[s] an informed and enlightened public opinion."  *Leopold v. United States*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (Garland, J.).

were made public after this Court "direct[ed] the government to explain" its rationale for secrecy and the government provided no such rationale). As such, ancillary proceedings, "which may include a motion 'to quash a subpoena, or to compel testimony, or to immunize a witness,' as well as the attendant records, shall be shielded from the public" only "to the extent necessary to prevent disclosure of matters occurring before a grand jury." *In re Grand Jury Subpoena No. 7409*, 2019 WL 2169265, at *2 (D.D.C. Apr. 1, 2019) (Howell, C.J.) (citing *Dow Jones*, 142 F.3d at 502; Fed. R. Crim. P. 6(e)(5), (6); L. Crim. R. 6.1). "[O]ne of the ways information loses its Rule 6(e) protection is when a grand-jury witness 'intentionally publicize[s]' it." *In re Pence*, 678 F. Supp. 3d at 141.

Local Rule 6.1 therefore provides that unsealing may occur when it is no longer necessary to preserve the secrecy of matters before the grand jury. Put differently, where the need for secrecy ends as to the identity of grand jury witnesses or their substantive testimony, the public's right to additional information and records begins. Therefore, "the Rule allows for their release once sealing them is no longer 'necessary' to protect grand-jury secrets." *In re Pence*, 678 F. Supp. 3d at 140; *see also In re Grand Jury Subpoena No. 7409*, 2019 WL 2169265, at *5 ("At bottom, Local Criminal Rule 6.1 provides the Reporters Committee with access to the briefs and transcripts, with any matters occurring before the grand jury redacted."); Order at 1, *In re Grand Jury Subpoena*, No. 18-3071 (D.C. Cir. June 7, 2019) (per curiam) ("order[ing] the parties to publicly file the proposed redacted versions of their briefs and the transcript (with certain exceptions)").

### B.    This Court's Recent Rulings On Access To Ancillary Records Support Unsealing These Records

Politico's access application here is on all fours with this Court's decision to grant access to other judicial records ancillary to grand jury proceedings, specifically records relating to

former Vice President Mike Pence's involvement in the grand jury investigation into the 2020

presidential election. *In re Pence*, 678 F. Supp. 3d at 138-47. There, as here, requested

information "ha[d] already [been] revealed," including in the witness's own "public statements."

*Id.* at 142-43. Because the access request concerned "matters before the grand jury that Pence

has 'virtually proclaimed from the rooftops,'" and due to "this historical context," the Court held

that the "documents may be disclosed in some form" with narrow, "appropriate redactions to the

parties' filings, the hearing transcript, and the Court's Opinion." *Id.* at 143, 147 (quoting *Dow

Jones*, 142 F.3d at 505).

      This Court also recently ordered the disclosure of other judicial records ancillary to grand

jury proceedings, granting in part a press request for access to court records relating to assertions

of executive privilege by President Trump or his associates. Following the D.C. Circuit's ruling

that some level of unsealing was proper in light of the "the Office of Special Counsel's

intervening public disclosure that privilege disputes arose before the grand jury," especially

when "coupled with the press's extensive reporting about the privilege disputes," *see Politico v.

United States*, 2024 WL 1739096, at *4 (D.C. Cir. Apr. 23, 2024), this Court ordered the release

of partially redacted records. Minute Order, *In re New York Times Co.*, 1:22-mc-100-JEB

(D.D.C. Oct. 24, 2024); Dkt. 32, *id.*

      Here, too, Patel and the Government have both effectively shouted "from the rooftops"

that (1) Patel received a subpoena to testify before the grand jury investigating President

Trump's handling of classified materials; (2) he moved to quash the subpoena; (3) the Court

denied that motion; (4) Patel testified but refused to answer questions pursuant to the Fifth

Amendment; (5) the Government moved to compel his testimony; (6) the Court granted that

motion on the condition that the Government grant Patel testimonial immunity; and (7) the

Government granted immunity and Patel testified before the grand jury a second time. In light of the extensive public disclosures by Patel and the Government, these records are no longer secret and their disclosure is proper.

### C.    The Court Should Exercise Its Discretion To Unseal Judicial Records That Do Not Reveal Secret Grand Jury Information

In light of the powerful and justifiable public interest in the role that President Trump's nominee for FBI Director played in the investigation of the President's handling of classified materials, and the already extensive public disclosures about the subpoena, the public would greatly benefit from understanding the arguments for and against Patel's motion to quash and the Government's motion to compel, the Court's process of adjudicating the motions, and the decisions the Court reached. Release of the requested records, even with the narrow redaction of any Rule 6(e) information that would disclose still-secret details about proceedings before the grand jury, would thus shed much needed light on this ancillary matter. Politico therefore respectfully requests that the Court enter an order that will facilitate the disclosure of any dockets, court orders or opinions, legal briefing, or argument transcripts ancillary to the grand jury described herein, including such materials litigating Patel's motion to quash and the Government's motion to compel Patel's testimony before the grand jury. *See, e.g.*, *In re Pence*, 678 F. Supp. 3d at 147; *In re Grand Jury Subpoena No. 7409*, 2019 WL 2169265, at *3.

## II.    ALTERNATELY AND ADDITIONALLY, THE COURT SHOULD RELEASE THE REQUESTED RECORDS PURSUANT TO THE FIRST AMENDMENT RIGHT OF ACCESS

This Court should release the opinions and orders related to the Patel subpoena for the additional and independent reason that those records are subject to the First Amendment right of access and the government cannot carry the heavy burden to justify keeping those records sealed.

**A.    The First Amendment Right Of Access Applies To Opinions And Orders**

In *Richmond Newspapers v. Virginia*, the Supreme Court recognized that "the right to attend criminal trials is implicit in the guarantees of the First Amendment," as "without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and 'of the press could be eviscerated.'" 448 U.S. 555, 580 (1980) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)).  The Supreme Court and lower courts have since then identified additional categories of proceedings and records to which the constitutional right of access attaches, and "sketched a two-stage process for resolving whether the First Amendment affords the public access to a particular judicial record or proceeding." *Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring).

"First the court must determine whether a 'qualified First Amendment right of public access' exists." *Id.*  To make that determination, "the Supreme Court has identified two requirements that it calls the tests of experience and logic." *Id.* at 1103 (cleaned up) (citing *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise II*"), 478 U.S. 1, 9 (1986) and *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1331-32 (D.C. Cir. 1985)).  The experience test asks "whether the proceeding has historically been open," while "the somewhat oddly labeled logic inquiry asks whether the right of access plays an essential role in the proper functioning of the judicial process and the government as a whole." *Id.*  If the right of access applies, then the records or proceedings "may be sealed but only if 'specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 1092 (quoting *Press-Enterprise II*, 478 U.S. at 13-14).

Both experience and logic favor access to court opinions and orders.  In terms of experience, there is perhaps no type of judicial record more firmly established in our common law system as traditionally available to the public than court orders and decisions.  As the

11

Supreme Court explained more than a century ago, "The whole work done by the judges

constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is

free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a

constitution or a statute." *Banks v. Manchester*, 128 U.S. 244, 253 (1888). Put another way:

> As ours is a common-law system based on the "directive force" of
> precedents, its effective and efficient functioning demands wide
> dissemination of judicial decisions. . . . Even that part of the law
> which consists of codified statutes is incomplete without the
> accompanying body of judicial decisions construing the statutes.
>
> Accordingly, under our system of jurisprudence the judiciary has the
> duty of publishing and disseminating its decisions.

*Lowenschuss v. W. Publ'g*, 542 F.2d 180, 185 (3d Cir. 1976); *see also Union Oil v. Leavell*, 220

F.3d 562, 568 (7th Cir. 2000) ("[the judge's opinions and orders belong in the public domain")*;*

*PepsiCo v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995) ("Opinions are not the litigants' property.

They belong to the public, which underwrites the judicial system that produces them.").

In terms of logic, it is likewise hard to overstate the importance of access to opinions and

orders. Such decisions *are* the law, and in our common law system each ruling contributes to a

body of precedent that has historically recognized the vital importance of public access:

> The decisions and opinions of the justices are the authorized
> expositions and interpretations of the laws, which are binding upon
> all the citizens. They declare the unwritten law, and construe and
> declare the meaning of the statutes. Every citizen is presumed to
> know the law thus declared, and it needs no argument to show that
> justice requires that all should have free access to the opinions, and
> that it is against sound public policy to prevent this, or to suppress
> and keep from the earliest knowledge of the public the statutes, or
> the decisions and opinions of the justices. Such opinions stand,
> upon principle, on substantially the same footing as the statutes
> enacted by the legislature.
>
> It can hardly be contended that it would be within the constitutional
> power of the legislature to enact that the statutes and opinions should
> not be made known to the public.

*Nash v. Lathrop*, 6 N.E. 559, 560 (Mass. 1886); *accord Torres v. INS*, 144 F.3d 472, 474 (7th

Cir. 1998) ("The idea of secret laws is repugnant. People cannot comply with laws the existence

of which is concealed."). Moreover, access to opinions and orders promotes public confidence

in and supervision of the courts. *See, e.g.*, *Co. Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir.

2014) ("Without access to judicial opinions, public oversight of the courts, including the

processes and the outcomes they produce, would be impossible."); *see also NLRB v. Sears,

Roebuck & Co.*, 421 U.S. 132, 153 (1975) (interpreting FOIA to require "disclosure of all

opinions and interpretations which embody the agency's effective law and policy," consistent

with "congressional aversion to secret [agency] law" and "an affirmative congressional purpose

to require disclosure of documents which have the force and effect of law" (cleaned up)).

Public access to judicial opinions and orders thus passes the tests of both experience and

logic, and the First Amendment right of access applies accordingly.

### B.    The First Amendment Right Of Access To Opinions And Orders Applies Even In The Context Of Ancillary Proceedings

The government may argue that even if the First Amendment right of access applies to

court opinions and orders generally, it does not apply to opinions and orders issued in ancillary

proceedings, and to be sure the government could cite the D.C. Circuit's statement that

"[a]lthough public access plays an important role in other aspects of the judicial process, 'there is

no First Amendment right of access to grand jury proceedings,' nor do First Amendment

protections extend to ancillary materials dealing with grand jury matters, such as [a] concurring

opinion." *In re Judith Miller II*, 493 F.3d at 154 (quoting *Dow Jones*, 142 F.3d at 499). But this

Court should reject that argument, just as the Supreme Court rejected an analogous approach to

analyzing the scope of the constitutional right of access in *Globe Newspaper v. Superior Court*,

457 U.S. 596 (1982).

There, the Commonwealth of Massachusetts argued that although there is a right of access to criminal trials, that right should not extend to criminal trials specifically involving sex crimes against minors, because "criminal trials have not always been open to the press and general public during the testimony of minor sex victims." 457 U.S. at 605 n.13. As the Court explained, it had already "discerned a First Amendment right of access to criminal trials based in part on the recognition that as a general matter criminal trials have long been presumptively open." *Id.* The question of whether the right applies to "any particular criminal trial, such as a murder trial . . . or a rape trial" did not depend on "the historical openness of *that type* of criminal trial." *Id.* (emphasis added); *accord Dhiab*, 852 F.3d at 1104-05 (Williams, J., concurring) (discussing *Globe Newspaper* and noting that "the Court applied its experience-and-logic tests to criminal trials generally, rejecting the state's effort to make the classification at the level of the testimony in question – that of a minor child in a sexual abuse case").

Just as in *Globe Newspaper*, therefore, where the Supreme Court decided that the proper question was whether the First Amendment right of access applies to criminal trials *generally*, not to a specific type of testimony at a specific type of trial, the question before this Court is whether the right of access applies to judicial opinions and orders *generally*, not whether it applies to opinions and orders issued in specific types of proceedings, such as ancillary proceedings. Because *Dow Jones* and *Judith Miller II* did not reach that specific question, this Court should do so and, given the extensive history and compelling logic discussed above, recognize that the constitutional right of access applies to these opinions and orders.

## C.    The Government Cannot Justify Completely Sealing These Judicial Records Of Intense Public Interest And Importance

If the Court agrees that a First Amendment right of access applies to judicial opinions and orders, then to justify withholding from the public the court opinions and orders adjudicating

claims of executive privilege at issue here, the government must demonstrate that such sealing

"is essential to preserve higher values and is narrowly tailored to serve that interest." *Dhiab*, 852

F.3d at 1102 (Williams, J., concurring).  Specifically, to overcome the constitutional access right

the government must demonstrate that:

a.  There is a substantial probability of prejudice to a compelling interest if the right is not limited. *Press-Enterprise II*, 478 U.S. at 13-14; *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise I*"), 464 U.S. 501, 510 (1984); *Richmond Newspapers*, 448 U.S. at 580-81.

b.  There is no alternative to a limitation of the access right that will adequately protect against the threatened harm. *Press-Enterprise II*, 478 U.S. at 13-14; *Wash. Post v. Robinson*, 935 F.2d 282, 289-90 (D.C. Cir. 1991).

c.  Restricting access will effectively protect against the threatened harm. *Press-Enterprise II*, 478 U.S. at 14; *Robinson*, 935 F.2d at 291-92.

d.  The restriction on access is narrowly tailored to minimize the harm to the public's access rights. *Press-Enterprise II*, 478 U.S. at 13-14; *Robinson*, 935 F.2d at 287.

In analyzing these issues, two points bear particular emphasis.

**First**, the Supreme Court and the D.C. Circuit have consistently released opinions

resolving disputes in ancillary proceedings – including opinions of major public interest – with

narrow (if any) redactions rather than blanket withholdings. *See, e.g., Branzburg*, 408 U.S. 665

(arising out of journalists' motions to quash grand jury subpoenas); *In re Grand Jury Subpoena,*

*Judith Miller* ("*In re Judith Miller I*"), 438 F.3d 1141 (D.C. Cir. 2005) (same); *In re Sealed Case*

*No. 99-3091*, 192 F.3d 995 (D.C. Cir. 1999); *In re Sealed Case*, 932 F.3d 915 (D.C. Cir. 2019).

**Second**, in deciding what if any material must be redacted to protect the secrecy of

matters before the grand jury, the D.C. Circuit has instructed that "[t]here is no per se rule

against disclosure of any and all information which has reached the grand jury chambers."

15

*Senate of Puerto Rico ex rel. Jud. Comm. v. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).

"The disclosure of information coincidentally before the grand jury which can be revealed in

such a manner that its revelation would not elucidate the inner workings of the grand jury is not

prohibited." *Id.* (cleaned up); *see also In re Pence*, 678 F. Supp. 3d at 140.

With these principles in mind, this Court should conclude that the First Amendment right

of access requires the release of records related to the Patel subpoena, with only those narrow

redactions necessary to protect grand jury secrecy.

## CONCLUSION

For the foregoing reasons, Politico respectfully requests that this Court grant this

application and promptly unseal to the greatest extent possible the requested judicial records.

Dated:  February 10, 2025          Respectfully submitted,

BALLARD SPAHR LLP

*/s/ Maxwell S. Mishkin*
Maxwell S. Mishkin (#1031356)
Chad R. Bowman (#484150)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
mishkinm@ballardspahr.com
bowmanchad@ballardspahr.com

Sasha Dudding (#1735532)
1675 Broadway, 19th Floor
New York, NY 10019
Tel: (212) 223-0200
Fax: (212) 223-1942
duddings@ballardspahr.com

*Counsel for Petitioner POLITICO LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February 2025, I caused true and correct copies of

the foregoing to be served by email and U.S. Mail on the following:

    Elizabeth J. Shapiro
    Deputy Director
    Civil Division, Federal Programs Branch
    U.S. Department of Justice
    1100 L Street, NW
    Washington, DC 20005
    Elizabeth.Shapiro@usdoj.gov

                        /s/ *Maxwell S. Mishkin*
                        Maxwell S. Mishkin