## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE GRAND JURY SUBPOENA
NO. 63-13

**NO. 22GJ-41**

**FILED UNDER SEAL**

### RESPONSE IN OPPOSITION TO MOTION TO QUASH

Movant, Kashyap Patel, seeks to quash what he concedes is a properly served grand jury subpoena, the appearance date for which has already been extended once at Mr. Patel's request, arguing that he should not have to appear while his counsel is in the middle of a lengthy jury trial in this district. *See* Motion to Quash ("Motion") at 1. His motion to quash identifies no case in which a such a request has been granted on this basis, and for good reason: if accepted, his argument would allow witnesses to forestall the grand jury indefinitely— ████████████ ████████████████████—simply by responding to receipt of a grand jury subpoena by engaging private counsel with known and prolonged scheduling conflicts.

That concern is squarely raised by what occurred here: after the government and Mr. Patel had agreed to continue the original date of his appearance from September 29 to October 13, Mr. Patel—himself an attorney—engaged private counsel with an apparent scheduling conflict that will last at least for several weeks, and he is now attempting to delay his testimony for that unspecified duration of time. Mr. Patel retained his attorney on September 27, *see* Motion at 2— the same date the attorney began jury selection in a trial scheduled to last for weeks. *See United States v. Rhodes, et al.*, No. 22-cr-15-APM (D.D.C.). Mr. Patel now claims he cannot appear until the trial concludes, which may postpone his appearance weeks beyond the subpoena's return date.

As reflected in the emails attached to the motion, the government offered reasonable accommodations related to Mr. Patel's appearance pursuant to the subpoena, but because Mr.

1

Patel's counsel did not accept any of the government's proposed alternatives and would not agree to a near-term date certain for Mr. Patel's testimony, the government informed counsel that it intended to proceed with the valid subpoena. This Court should allow the government to do so and deny Mr. Patel's motion to quash.

**BACKGROUND**





Accordingly, on behalf of a grand jury sitting in this district, on September 19, 2022, the government served Mr. Patel with a subpoena, seeking his appearance and the provision of documents on September 29, 2022. Mr. Patel contacted government counsel on September 23, 2022, indicating that he was working on retaining counsel, and that he sought a two-week extension of the subpoena. *See* Exhibit A to this Memorandum (Correspondence between Patel and Reynolds). The government agreed to the two-week extension, setting the time and date for his testimony as October 13, 2022, at 1:00 p.m. *See id.*

On September 27, 2022, newly engaged counsel for Mr. Patel contacted government counsel and arranged a call on September 30, 2022. *See* Motion at 2. During the September 30 conversation, Mr. Patel's counsel indicated that because he was in the middle of a jury trial in this district, he would not be able to facilitate his client's appearance until after the conclusion of that

trial.[2] Government counsel expressed surprise that Mr. Patel had knowingly engaged an attorney who would be in the middle of a lengthy jury trial on the scheduled grand jury date. Mr. Patel's counsel indicated that, at the time of his retention, Mr. Patel had not known that his counsel would be in the middle of a trial.

In this call, government counsel communicated the government's willingness to make reasonable further modifications in negotiating a mutually acceptable date, even after previously agreeing to the two-week extension that Mr. Patel had requested. Government counsel offered multiple possibilities to accommodate counsel, including the possibility of seeking grand jury time on a Friday afternoon, as the government's understanding is that the *Rhodes* trial is not sitting on Friday afternoons; in addition, government counsel inquired about the possibility of a voluntary interview with government personnel over a weekend if that would be preferable to counsel and to Mr. Patel. The government reiterated this flexibility in recent correspondence with Mr. Patel's counsel. *See* Motion Exhibit B. Mr. Patel's counsel indicated that none of these options was acceptable because of his trial preparation obligations—instead, Mr. Patel's counsel contended, the government would have to wait at least until the conclusion of counsel's trial.[3] ███

---

[2] The jury questionnaire in the *Rhodes* trial explained that the trial is expected to last a month or more. *See Rhodes*, Dkt. No. 330 at 5. During opening statements, one defense counsel indicated that the lead defendant will testify, and news reporting has suggested that the trial may take up to six weeks. *See, e.g.,* Alan Feuer, *Sedition Trial of Oath Keepers Gets Underway*, New York Times (Sep. 27, 2022) ("The trial is expected to last four to six weeks . . ."), available at: https://www.nytimes.com/2022/09/27/us/jan-6-oath-keepers-trial.html; Spencer Hsu and Rachel Weiner, *From Serbia to Roger Stone, Oath Keepers Trial Traces Threads of Alleged Jan. 6 Plot*, Washington Post (Oct. 8, 2022) (referencing "projected six-week trial"), available at: https://www.washingtonpost.com/dc-md-va/2022/10/08/oath-keepers-trial-stone-rhodes/.

[3] The Motion asserts that the government's desire to proceed with Mr. Patel's scheduled grand jury testimony is that the government thought Mr. Patel, in particular, would be untruthful if information about the government's investigation were to become public prior to his testimony. *See* Motion at 2. To be clear, the government expects Mr. Patel to be truthful, just as it expects every witness to be truthful before a grand jury.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████    ████████████████████████████████████████████████

████████████████████████████████████████████████████

On October 4, 2022, having none of its suggested accommodations accepted by counsel, the government confirmed by email that it intended to proceed with the October 13 date. *See* Motion Exhibit B at 2. Mr. Patel's counsel responded that, if the government insisted on proceeding, Mr. Patel would not answer "any question" without consulting with counsel. *Id.* at 1.

██████████████████████████████████████████████████████████

██████████████    ████████████████████████████████████████

Mr. Patel's counsel offered to prioritize Mr. Patel's grand jury testimony as soon as the trial ends, but because it is unclear when that will be, he did not provide the government with a date certain. *See id.* at 2. The government responded by reiterating its willingness to seek Friday testimony when the *Rhodes* trial is not sitting, but otherwise reiterated that absent an agreement on an alternative it intended to proceed on October 13.[5] *See id.* at 1. Mr. Patel thereafter filed the Motion.

---

█████████████████████████████████████████████████████████

████████████

[5] The Motion also briefly discusses the document aspect of the grand jury subpoena. *See* Motion at 2, and Motion Exhibit A (Subpoena) at 3. The Motion asserts that the government is "flexible in the timing" of the production of records. The primary discussion of the document production during the government's call with counsel related to the form of production, as Mr. Patel's counsel indicated that he was using a new vendor who could retrieve documents from electronic devices in a forensically sound manner, but wished to test the vendor before producing documents. The government was, and remains, willing to discuss the timing and form of any

## ARGUMENT

As this Court has recognized, "the law vests the grand jury with substantial powers . . . [i]ndispensable to the exercise [of which] is the authority to compel the attendance and the testimony of witnesses . . . and to require the production of evidence." *In re Grand Jury Investigation*, No. 19-gj-15 (BAH) (D.D.C. March 4, 2019), 2019 WL 2179116 at \*9 (citing *United States v. Mandujano*, 425 U.S. 564, 571 (1976)) (alterations in original). And as Mr. Patel acknowledges, Federal Rule of Criminal Procedure 17(c) permits a court to quash a subpoena only where "compliance would be unreasonable or oppressive," and that in the grand jury context, that standard requires a "valid constitutional, common-law, or statutory privilege." Motion at 3 (citing *In re Grand Jury Subpoena No. 11116275*, 846 F. Supp. 2d 1, 4 (D.D.C. 2012)).

The Motion identifies the First, Fifth, and Sixth Amendments as establishing the "constitutional . . . privilege" necessary to support a motion to quash. *See* Motion at 5. The First and Fifth Amendments are each invoked only briefly. The relevance of the First Amendment to Mr. Patel's position is unclear, as the case cited in the Motion in which the question of the First Amendment's right of association arose concerned the joint representation of a large group of nearly two dozen Washington Post employees by a single attorney. *See In re Investigation before April 1975 Grand Jury*, 531 F.2d 600, 604 (D.C. Cir. 1976). That case, therefore, involved those witnesses' "right to associate for the purpose of retaining legal representation," insofar as the order challenged on appeal disqualified the attorney from representing more than one witness. *See id.* Those concerns do not arise here, where the subpoena concerns a single witness and the government is not seeking disqualification of Mr. Patel's counsel.

---

production, but generally requires documents to be produced in advance of or concurrently with a grand jury appearance, and has not extended the deadline for the production of documents here.

████████████████████████████████████████████████████

██████████████████████████████████████████████████ will not seek

to prevent his reasonable consultation with counsel in order to properly invoke his Fifth

Amendment rights. As the Motion indicates, the government typically allows witnesses to step

outside of the grand jury room to consult with counsel, and the government will do so here. Even

such consultations, though, may be regulated. *See In re Grand Jury Proceedings*, 713 F.2d 616,

617–18 (11th Cir. 1983) (no right to consult after each question); *In re Tierney*, 465 F.2d 806,

810–11 (5th Cir. 1972) (witness allowed to consult only after every two or three questions; court

has power to prevent disruption of proceedings by frivolous departure from grand jury room); *In

re Grand Jury Proceedings*, No. 06-MC-291, 2006 WL 1764387, at *2 (E.D.N.Y. June 26, 2006)

(court limited grand jury witness to three minutes per consultation with attorney).

Beyond the First and Fifth Amendments, Mr. Patel grounds his argument primarily in the

Sixth Amendment, citing a 1976 case from the D.C. Circuit for the proposition that courts in this

District have not decided whether the Sixth Amendment affords a right to counsel. *See* Motion at

3 (citing *In re Investigation before April 1975 Grand Jury*, 531 F.2d 600 (D.C. Cir. 1976)). But

that case was decided before the Supreme Court's decision later that year in *Mandujano*, in which

a plurality explained that where no criminal proceedings had been instituted against a witness, the

"Sixth Amendment right to counsel had not come into play." *Mandujano,* 425 U.S. at 581. And

although that represented only a plurality opinion, the four-justice concurrence disagreed only

because the witness in question was a "putative defendant." *Id.* at 602-03. ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████

Even in the trial context, where the Sixth Amendment right unquestionably attaches, "the right to retain counsel of one's own choice is not absolute," in that it "cannot be insisted upon in a manner that will obstruct an orderly procedure of courts in justice, and deprive such courts of the exercise of their inherent powers to control the same." *United States v. Burton*, 584 F.2d 485, 489 (D.C. Cir. 1978) (internal citation and quotation marks omitted). This is because the "public has a strong interest in the prompt, effective, and efficient administration of justice; the public's interest in dispensation of justice that is not unreasonably delayed has great force." *Id.* The same principles apply with greater force here, in the grand jury context, where the *Mandujano* plurality establishes there is no equivalent Sixth Amendment right. *Cf. In re Investigation before Feb., 1977, Lynchburg Grand Jury*, 563 F.2d 652, 655 (4th Cir. 1977) (explaining that even "assuming there is [a Sixth Amendment right for grand jury witnesses], we are doubtful that the right would be absolute when conflicting with, and when posing a threat to, the public's right to the proper functioning of a grand jury investigation"). Similarly, while the D.C. Circuit does not appear to have addressed the question, the Ninth Circuit has concluded that the Sixth Amendment right to "counsel of choice" in criminal cases does not have an equivalent in the grand jury context. *See, e.g., In re Grand Jury Investigation*, 182 F.3d 668, 670-71 (9th Cir. 1999) ("Although the witnesses claim to have a due process right to the aid of counsel when testifying before the grand jury, that asserted right is not coextensive with the qualified right to counsel of choice possessed by defendants in a criminal case and guaranteed by the Sixth Amendment."); *see also* Conflicts of Interest and the Criminal Lawyer, 94 Harv. L. Rev. 1373, 1397 n. 128 (1981) ("[I]t is generally agreed that the grand jury witness has no Sixth Amendment right to counsel of his choice.").

In any event, even if there were a clear Sixth Amendment right to counsel in the grand jury context, the government's position does not require Mr. Patel to testify without the benefit of

8

counsel. The only question is whether Mr. Patel can quash the subpoena and indefinitely delay his testimony by hiring an attorney who was and is unavailable on the previously agreed date for testimony and who apparently remains unavailable for the foreseeable future. The government's interests in pursuing this matter should not be overcome by counsel's decision to undertake a representation of Mr. Patel on the very day counsel began a lengthy trial and knowing that he could not represent Mr. Patel on the date the government had moved to accommodate him.

The government was and remains willing to make reasonable, limited adjustments to the subpoena as a professional courtesy and to accommodate Mr. Patel. Indeed, it already did so, granting Mr. Patel a two-week extension at his request. *See* Exhibit A to this Memorandum. But the Motion points to no case in which the unavailability of counsel is grounds to quash a subpoena in its entirety, postponing the grand jury's investigation indefinitely. That is because allowing the unavailability of counsel to postpone testimony indefinitely interferes with the government's ability to conduct an investigation expeditiously and may hinder the government's investigation. For example, the passage of time can cause memories to fade. In addition, as more information about an investigation becomes public, it makes it more likely that witnesses will be able to coordinate their testimony, causing it to be more difficult for the government to assess a witness's veracity. These concerns would apply in virtually any investigation and to virtually any witness

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Cf. United States v. Calandra*, 414 U.S. 338, 349-50 (1974) (cautioning against "protracted interruption of grand jury proceedings" because "delay might be fatal to the enforcement of the criminal law") (internal quotation marks and citation omitted). Moreover, considering that Mr. Patel retained an attorney who already knew he had a conflict that

would last for weeks, quashing the subpoena in this instance would provide a basis for witnesses to purposefully obtain counsel with scheduling conflicts as a delay tactic.

The Motion, therefore, provides no basis to quash the subpoena. It should be denied, and Mr. Patel obligated to attend the scheduled grand jury session on October 13, 2022. Should Mr. Patel retain counsel who is able to attend, he will be afforded reasonable opportunities to consult; if he is not able to do so, the government is willing at his or the Court's request to contact the Federal Public Defender's office to see if an attorney can be provided for the limited purpose of assisting Mr. Patel should he need a consultation during the grand jury proceeding.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.


October 11, 2022

Respectfully submitted,

MATTHEW G. OLSEN
ASSISTANT ATTORNEY GENERAL
NATIONAL SECURITY DIVISION


/s/_____
Jay I. Bratt
Julie A. Edelstein
Brett C. Reynolds
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
(202) 233-0986