UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE GRAND JURY SUBPOENA<br>NO. 63-13 | NO. 22-GJ-41<br><br>**FILED UNDER SEAL** |

## MOTION TO COMPEL GRAND JURY TESTIMONY

Following this Court's denial of Kashyap Patel's Motion to Quash a subpoena to testify before a grand jury sitting in this district, *see* Minute Order (Oct. 11, 2022), ▮

▮ Mr. Patel began invoking the Fifth Amendment's privilege against self-incrimination. ▮

▮ The government moves this Court to require Mr. Patel to appear before the Court to bear his burden of establishing the appropriateness of his invocations of the Fifth Amendment, and thereafter order Mr. Patel to re-appear before the grand jury and provide testimony on the topics for which he frivolously invoked the Fifth

1

Amendment on October 13, 2022. Should the Court provide Mr. Patel an opportunity to respond before ordering him to appear before the Court, the government respectfully requests that counsel be ordered to respond on an expedited schedule.

## FACTUAL BACKGROUND







the government issued a subpoena for his testimony before a grand jury in this district. The subpoena ▮▮▮ ordered him to appear before a grand jury in this district on September 29, 2022. As the government has explained in previous filings before this Court, it thereafter agreed to Mr. Patel's request for a two-week extension to October 13, 2022, setting the time for his appearance at 1:00 p.m. *See* Dkt. No. 3 at 3. On September 27, 2022, newly engaged counsel for Mr. Patel contacted government counsel and arranged a call for September 30, 2022. *See id.* During that call, Mr. Patel's counsel requested that Mr. Patel's testimony be delayed until the conclusion of a criminal trial in this district in which Mr. Patel's counsel represents one of the defendants. *See id.* at 3-4.

As the Court is aware, the government did not agree to the indefinite extension and Mr. Patel thereafter moved to quash the subpoena. *See* Dkt. No. 3 at 4-5. The Court denied the Motion to Quash, *see* Minute Order (Oct. 11, 2022), ▮▮▮ Late in the evening on October 11, 2022—two days before Mr. Patel's scheduled testimony on October

13—his counsel asked the government if Mr. Patel's testimony could be moved from 1:00 p.m. to earlier in the day. *See* Exhibit 1 hereto (email correspondence between Woodward and Reynolds). On the evening of October 12, 2022, government counsel confirmed to Mr. Patel's counsel that the grand jury's schedule had been adjusted and could accommodate Mr. Patel at 9:00 a.m. *See id.*

At 9:00 a.m. on the morning of October 13, with the grand jury waiting, Mr. Patel's counsel communicated to government counsel that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ the grand jurors agreed ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ to hear Mr. Patel's testimony rather than adjourning for the day ▬▬▬▬▬▬

Prior to Mr. Patel's testimony, government counsel and Mr. Patel's counsel conferred briefly in the courthouse. During this conversation, Mr. Patel's counsel indicated that Mr. Patel was likely to invoke the Fifth Amendment. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

The entire transcript of Mr. Patel's testimony is attached hereto. *See* Exhibit 2 ("Transcript"). Mr. Patel ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ began to invoke the Fifth Amendment ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ He continued to ▬▬▬ invoke the Fifth Amendment, ▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬

5



Mr. Patel

invoked the Fifth Amendment



Mr. Patel also invoked the Fifth Amendment ▮▮▮ *see* Transcript at 21, ▮▮▮

Mr. Patel continued to invoke the Fifth Amendment ▮▮▮

*See* Transcript at 17.

▮ After leaving the grand jury room, government counsel conferred with Mr. Patel's counsel, who was present in the grand jury suite, and inquired as to whether he would be amenable to immediately seeking guidance from the Chief Judge's chambers. He declined, and government counsel indicated that the government viewed Mr. Patel's Fifth Amendment invocations as too broad and meritless, and that it would file a motion to compel.

## ARGUMENT

The Fifth Amendment establishes that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. 5. It applies not only at a criminal trial, but allows an individual "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984). Giving the privilege a "liberal construction," *Miranda v. Arizona*, 384 U.S. 436, 461 (1966), the Supreme Court has held that it extends not only to answers that are themselves inculpatory but "would furnish a link in the chain

7

of evidence needed to prosecute the claimant," *Ohio v. Reiner*, 532 U.S. 17, 20 (2001) (per curiam) (citing *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).

Nevertheless, the privilege "must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Hoffman*, 341 U.S. at 486 (citing *Mason v. United States*, 244 U.S. 362, 365 (1917)). A witness is not "exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, and to require him to answer if 'it clearly appears to the court that he is mistaken.'" *Id.* (quoting *Temple v. Commonwealth*, 75 Va. 892, 899 (1881)). *See also Reiner*, 532 U.S. at 21 ("We have held that the privilege's protection extends only to witnesses who have reasonable cause to apprehend danger from a direct answer. That inquiry is for the court; the witness' assertion does not by itself establish the risk of incrimination. A danger of imaginary and unsubstantial character will not suffice.") (internal citations and quotation marks omitted); *Marchetti v. United States*, 390 U.S. 39, 53 (1968) ("The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination.").

Following those precedents, cases in this district have made clear that, for a witness to invoke the privilege, "the danger of self-incrimination must be real, not remote or speculative." *District Title v. Warren*, 265 F. Supp. 3d 17, 21 (D.D.C. 2017). Thus, when the Fifth Amendment is invoked, "'[a]s to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a real danger of . . . [in]crimination.'" *Id.* (quoting *Rogers v. United States*, 340 U.S. 367, 374 (1951)) (alterations in original). The burden, moreover, is on the witness advancing the claim of privilege.

*See Guo Wengui v. Clark Hill PLC*, No. 19-3195 (JEB), 2021 WL 4948023, at *2 (D.D.C. Oct. 25, 2021) ("To successfully invoke the privilege, Guo has the burden of proving that he faces a threat of self-incrimination that is 'real' and 'not remote or speculative.'") (quoting *District Title*, 265 F. Supp. 3d at 21).

As to the appropriate procedure where a witness invokes the Fifth Amendment privilege too broadly in a grand jury proceeding, the D.C. Circuit has held that the "traditional method of dealing with witnesses who make 'blind, indiscriminate and legally unwarranted assertions' of the privilege against self-incrimination" is to bring the "witness before the District Court for a ruling with respect to whether the privilege was properly asserted." *In re Investigation before April 1975 Grand Jury*, 531 F.2d 600, 608 (D.C. Cir. 1976) (quoting *Hoffman*, 341 U.S. at 488). If it is "perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answers cannot possibly have [a] tendency to incriminate," a district court can compel the witness to answer. *Id.* (internal quotation marks and citation omitted). In making that evaluation, a court can and should consider the "context in which a question is asked [which] imparts additional meaning to the question, and clarifies what information is sought." *Zicarelli v. New Jersey State Comm'n of Investigation*, 406 U.S. 472, 480 (1972).



███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████  ███████████████████████████████

████████████████████ See, e.g., United States v. Sampol, 636 F.2d 621, 653 (D.C. Cir. 1980) ("Misprision basically requires knowledge of the commission of a felony, and willful concealment from the authorities by some affirmative act.").

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████ ██ ██

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████ the Court should order Mr. Patel to appear before the grand jury to answer the questions put to him without any further delay.

## CONCLUSION

For the foregoing reasons, the Court should grant the government's Motion to Compel, require Mr. Patel to appear before the Court to bear his burden of establishing the appropriateness of his invocations of the Fifth Amendment, and thereafter order Mr. Patel to re-appear before the grand jury.

October 18, 2022

Respectfully submitted,

MATTHEW G. OLSEN
ASSISTANT ATTORNEY GENERAL
NATIONAL SECURITY DIVISION

/s/ Brett C. Reynolds
Jay I. Bratt
Julie A. Edelstein
Brett C. Reynolds
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
(202) 233-0986