**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE APPLICATION OF POLITICO LLC FOR ACCESS TO JUDICIAL RECORDS ANCILLARY TO CERTAIN GRAND JURY PROCEEDINGS CONCERNING KASHYAP PATEL** | **Misc. No. 25-7 (JEB)** |

## MEMORANDUM OPINION

In 2023, a grand jury in this district indicted then-former President Donald J. Trump and

an associate for mishandling classified documents and impeding the ensuing investigation.  In

the course of its investigation leading up to the indictment, the grand jury subpoenaed Kashyap

Patel, who now serves as Director of the Federal Bureau of Investigation.  As both the

Government and Patel himself later revealed, he resisted the subpoena before this Court's

predecessor ordered him to testify — which he eventually did under a grant of immunity.

Earlier this year, the news organization Politico filed an Application seeking access to the

court records generated by Patel's unsuccessful efforts to contest the subpoena.  The Government

subsequently released redacted versions of these records, but Politico now seeks further

unsealing.  Contrary to Politico's contentions, the Government has correctly articulated the

categories of information related to Patel's testimony that can — and cannot — be disclosed.

Even by those terms, however, the Government's proposed redactions appear to the Court to be

overbroad.  It will therefore order the Government to propose a new set of redactions that map

onto the categories it acknowledges can be divulged or justify why the existing redactions are

appropriately narrow.

I.    **Background**

In November 2022, the Justice Department announced the appointment of a Special

Counsel to oversee two ongoing criminal investigations. In re New York Times Co., 657 F.

Supp. 3d 136, 143–44 (D.D.C. 2023). The first examined attempts following the 2020

presidential election to unlawfully prevent the certification of the Electoral College vote and

impede the peaceful transfer of power. Id. The second considered the handling of classified

documents and presidential records, as well as the potential obstruction of that investigation. Id.

This matter arises out of the latter.

In June 2023, a grand jury in this district returned an indictment against then-former

President Trump and an aide, Waltine Nauta. See United States v. Trump, No. 23-80101, ECF

No. 3 (Indictment) (S.D. Fla. June 8, 2023). It alleged, among other things, that Trump had

willfully retained classified documents at his Mar-a-Lago residence after leaving the White

House and that he and Nauta had obstructed the Government's investigation. See id., ¶¶ 77, 79–

81, 83, 85, 87, 89, 92, 96. The resulting criminal case was brought in the Southern District of

Florida, but Judge Aileen Cannon dismissed it on the ground that the Special Counsel was

unconstitutionally appointed. See United States v. Trump, 740 F. Supp. 3d 1245, 1308–09 (S.D.

Fla. 2024). The Government appealed that order; after the change in administration, however, it

moved to voluntarily dismiss its appeal, see United States v. Trump, No. 24-12311, ECF No. 111

(11th Cir. Jan. 29, 2025), which motion the Eleventh Circuit granted. Trump, No. 24-12311,

ECF No. 113 (11th Cir. Feb. 11, 2025).

While the case was still live, Special Counsel prosecutors submitted a filing to the district

court that was later unsealed. See Trump, No. 23-80101, ECF No. 115-1 (Attachment A) (S.D.

Fla. Aug. 11, 2023). One of the documents within the filing contained information related to a

subpoena that the grand jury had issued to Patel in the course of its investigation.  See id. at ECF p. 77.  It revealed the following details.

In mid-September 2022, the FBI served Patel with a subpoena commanding him to testify before the grand jury a week later.  Id.  Initially acting without counsel, Patel sought and received a two-week extension.  Id.  After retaining counsel, however, he sought an "indefinite extension" because his lawyer was in the midst of a trial occurring within the same building where the grand-jury testimony would occur.  Id. at 77–78.  The Government objected to that request, and it offered Patel the ability to interview during times when the trial was not sitting, such as weekends.  Id. at 78.  After negotiations stalled, Patel in early October filed a motion to quash his appearance on the ground that testifying "would violate his constitutional rights by depriving him of his counsel of choice."  Id.  Former Chief Judge Beryl A. Howell of this district denied that motion and ordered him to appear, which he did.  Id.  During his testimony, "he repeatedly declined to answer questions on the basis of the rights afforded to him by the Fifth Amendment."  Id.  The Government then "moved to compel Patel's testimony," a request the court granted "contingent on" his being offered statutory immunity.  Id. at 78–79.  The Government made such offer, and Patel was granted immunity pursuant to 18 U.S.C. § 6003. After further discussions as to the timing of his appearance, Patel testified a second time in early November under the Government's immunity grant.  Id. at 79–80.

Two years later, then-President-elect Trump nominated Patel to helm the FBI.  During his January 2025 confirmation hearings before the Senate Judiciary Committee, Patel received questions about his grand-jury testimony.  See FBI Director Nominee Kash Patel Testifies at Confirmation Hearing, Part 2, C-SPAN (Jan. 30, 2025), https://www.c-span.org/program/senate-committee/fbi-director-nominee-kash-patel-testifies-at-confirmation-hearing-part-2/655100

(video from 3:13–7:19).  In response, Patel confirmed that he had testified before the grand jury,

that he had invoked his Fifth Amendment rights when doing so, and that he had been compelled

to testify by court order.  Id. (video from 3:13–45, 4:18–35).  When asked about the contents of

his testimony, Patel responded that while he would "love" for his grand-jury testimony "to be

released," it had "been sealed by the Department of Justice" and he was "not allowed to discuss

it" in that setting.  Id. (video from 4:58–5:11).  The questioning senator then correctly explained

that, on the contrary, Federal Rule of Criminal Procedure 6(e) allows witnesses like Patel to

divulge the contents of their testimony, meaning that nothing was preventing him from doing so

before the Committee.  Id. (video from 5:11–45, 5:53–6:02); see Butterworth v. Smith, 494 U.S.

624, 634–35 (1990).  Patel replied that he "want[ed]" his grand-jury testimony "made public,"

and that he had asked DOJ to do so but that it had "refused."  Confirmation Hearing, Part 2,

*supra* (video from 5:48–5:55).  Although the senator continued to press Patel about the substance

of his testimony, the nominee responded that his testimony "occurred over the course of three

weeks," that he did not "have the ability to recall everything [he] testified to," and that his

testimony was "best captured by [the] transcript in real time."  Id. (video from 5:53–6:32).  He

additionally "encourage[d]" the Committee to "get" the transcript and "make it public."  Id.

(video from 6:55–7:19).  Patel therefore did not describe the contents of his testimony.

     Politico subsequently filed the instant Application.  See ECF No. 1 at ECF p. 1

(Application); id. at ECF p. 4 (App. Br.).  (ECF No. 1 comprises both Politico's Application and

its brief in support; subsequent citations are to the internal page numbers of each document.)

The news organization seeks "access to all judicial records pertaining to" the Government's

motion to compel Patel's compliance with the subpoena, his motion to quash, and "related court

filings."  App. at 1.  More specifically, it seeks:

the grand jury subpoena, Patel's motion to quash that subpoena, the Government's motion to compel Patel's testimony, any briefing in support or opposition and all exhibits thereto, the transcript(s) of any hearing(s) on those motions, and any opinions or orders the Court issued adjudicating the motions.

App. Br. at 1–2. The judicial records arising from the back-and-forth over Patel's subpoena were docketed in In re Grand Jury No. 22-3 Subpoena 63-13, No. 22-gj-41 (D.D.C.).

In response, the Government acknowledged that the records that Politico sought could be released, albeit with redactions. See ECF No. 5 (Gov't Resp.) at 7. Information could be released, the Government maintained, only to the extent that it had been disclosed by the Special Counsel's criminal filing or by Patel's testimony. Id. Because neither the Special Counsel nor Patel had disclosed (1) "the factual subject matter of the information the grand jury sought from Patel," (2) "the substance of his grand jury testimony," or (3) "how the government sought to use the information obtained from Patel for the investigation," all references to these matters had to be redacted. Id.

The Government therefore asked to submit to the Court *ex parte* and under seal proposed redactions, id. at 9; ECF No. 11 (Notice), which request this Court granted. See Minute Order of May 13, 2025. After reviewing the Government's submission, the Court ordered it to publicly release the records with the proposed redactions. See Minute Order of June 9, 2025. It then held a hearing to determine whether Politico, having seen the Government's proposed redactions, sought further releases. At the hearing, Politico explained that it believes further releases are warranted; the Government demurred. Because the parties agreed that no further briefing was necessary, and as the Court has thoroughly reviewed the Government's proposed redactions, it is ready to decide the remaining dispute raised by the Application.

## II.      Legal Framework

### A.      Grand-Jury Secrecy

In general, "the grand jury context presents an unusual setting where privacy and secrecy are the norm." In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1141, 1150 (D.C. Cir. 2006) (quoting In re Sealed Case, 199 F.3d 522, 526 (D.C. Cir. 2000)). Witnesses "enter the grand jury room alone . . . . No judge presides and none is present." In re Motions of Dow Jones & Co. (Dow Jones I), 142 F.3d 496, 498 (D.C. Cir. 1998). Access to grand-jury materials turns on Federal Rule of Criminal Procedure 6(e)(2), which dictates that "[o]ther than witnesses, each person present . . . is forbidden from disclosing 'matters occurring before the grand jury.'" Id. (quoting Fed. R. Crim. P. 6(e)(2), 6(e)(3)(A)(ii)); see also In re Sealed Case No. 99-3091, 192 F.3d 995, 1002 (D.C. Cir. 1999). This arrangement "safeguards vital interests," including "(1) preserving the willingness and candor of witnesses called before the grand jury; (2) not alerting the target of an investigation who might otherwise flee or interfere with the grand jury; and (3) preserving the rights of a suspect who might later be exonerated." McKeever v. Barr, 920 F.3d 842, 844 (D.C. Cir. 2019) (citing Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 219 (1979)).

Through Federal Rule of Criminal Procedure 6(e), Congress "codifie[d] the traditional rule of grand jury secrecy." United States v. Sells Eng'g, Inc., 463 U.S. 418, 425 (1983). In this Circuit, a court lacks any "inherent," freestanding "authority" to release matters occurring before the grand jury beyond what Rule 6(e) permits. McKeever, 920 F.3d at 844–50.

### B.      Accessing Ancillary Proceedings

The grand jury's business occasionally calls for "judicial proceedings relating to," but "at arm's length" from, the grand jury itself, including to resolve a witness's "motion to . . . quash

[a] subpoena." Dow Jones I, 142 F.3d at 498.  Records of such proceedings ancillary to the grand jury's work are not themselves subject to grand-jury secrecy but are instead governed by Rule 6(e)(6), which requires that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury" (emphasis added).  Although Rule 6(e)(6) displaces any First Amendment or common-law right of access to documents in ancillary proceedings, see Dow Jones I, 142 F.3d at 500–04, the Rule allows for their release once sealing them is no longer "necessary" to protect grand-jury secrets.

In assessing the extent of such necessity, the Circuit has explained that Rule 6(e)(6)'s protection of "a matter occurring before a grand jury" encompasses "not only what has occurred and what is occurring, but also what is likely to occur" before that body.  Id. at 500.  The Rule therefore protects information in ancillary documents that reveals "'the identities of witnesses or jurors, the substance of testimony' as well as actual transcripts, 'the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'"  Id. (quoting SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1382 (D.C. Cir. 1980)).  Although Rule 6(e)(6) protection "does not create a type of secrecy which is waived" as soon as "public disclosure occurs," once "information is sufficiently widely known[,] . . . it has lost its character as Rule 6(e) material." Id. at 505 (quoting In re North, 16 F.3d 1234, 1245 (D.C. Cir. 1994)).  The Rule's secrecy requirements therefore yield only "when there is no secrecy left to protect."  In re Grand Jury Subpoena, Judith Miller (Miller II), 493 F.3d 152, 154 (D.C. Cir. 2007) (citation omitted).

    C.    Local Rule 6.1

This Court's Local Criminal Rules set out a mechanism for releasing documents in ancillary proceedings.  Rule 6.1 provides that "[p]apers, orders and transcripts of hearings" in

proceedings ancillary to the grand jury "or portions thereof[] may be made public by the Court on its own motion or on motion of any person upon a finding that continued secrecy is not necessary to prevent disclosure of matters occurring before the grand jury" (emphasis added). Once such a finding has been made, the Circuit has instructed that "where the Rules authorize [courts] to do so, [courts] may — and should — release any information so long as it does not reveal" material that Rule 6(e)(6) protects. In re Grand Jury Subpoena, No. 18-3071, Order at 1 (D.C. Cir. Apr. 23, 2019) (emphasis added). Prior to public release, the Chief Judge may also "redact[] documents." Dow Jones I, 142 F.3d at 501, 506 (describing Chief Judge's release of former President Clinton's motion seeking contempt order for violations of grand-jury secrecy); see, e.g., In re Grand Jury Subpoena No. 7409, No. 18-41, 2019 WL 2169265, at *3, *5 (D.D.C. Apr. 1, 2019) (ordering release of redacted briefs and transcripts in contempt dispute ancillary to grand-jury investigation into foreign-election interference); Order and Unsealed Records, Grand Jury No. 18-41 (June 7, 2019), https://perma.cc/4K53-B3KL (displaying redacted filings, transcript, and court opinion for public viewing on court website).

## III.    Analysis

As noted, the Government has already disclosed redacted versions of the opinions and orders concerning Patel's efforts to contest the grand-jury subpoena issued to him. Politico nonetheless presses two points. First, it argues that the redactions exceed what is necessary to protect grand-jury secrecy under Rule 6(e) because disclosures here should not be limited — as the Government maintains — to what has already been revealed by the Special Counsel or by Patel in his congressional testimony. See ECF No. 6 (Reply) at 2–3. Second, the news organization contends that, in any event, it has a standalone First Amendment right to access those documents that supersedes any secrecy strictures imposed by Rule 6(e). Id. The Court

8

disagrees on both scores and concludes that the Government is correct that the scope of releases here must hew only to what has already been publicly disclosed by the Special Counsel and by Patel. The Court finds, however, that those redactions appear to be overbroad in certain places. It will therefore order the Government to submit a new set of proposed redactions consistent with this Opinion or explain why it believes that the current redactions are still somehow justified.

In the sections below, the Court first addresses to what degree any issues relating to Patel's grand-jury testimony have been disclosed such that they lose their secrecy protection. It then turns to whether the Government's redactions are sufficiently narrow.

A.      Scope of Disclosures

Politico contends that three categories of disclosures here support release of the records it seeks: (1) the Special Counsel's above-described filing in United States v. Trump; (2) Patel's testimony at his confirmation hearing; and (3) "extensive" media reports about his appearance before the grand jury. See Reply at 2–3, 5; App. Br. at 9–10. While the Government concedes that the first two categories are the kind that can lift grand-jury secrecy, it objects that the third does not. In explaining why the Court agrees with that position, it starts with the last category and then proceeds to the first two.

As it has in similar applications, Politico contends that the Government "views the scope of permissible disclosure here too narrowly" by failing to account for "the extensive press reporting on Patel's grand jury appearance." Id. at 2–3; see In re Press App. of the N.Y. Times Co., No. 22-mc-100, ECF No. 36 (Mem. Op.) at 6 (D.D.C. July 10, 2025) (pressing same argument). As both this Court and its predecessor have repeatedly explained, however, public reporting alone does not eliminate Rule 6(e) protections for grand-jury materials. See In re Press App. for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former

President Trump's Commc'ns with His Att'ys (Press App. for Trump's Commc'ns), 687 F.

Supp. 3d 132, 137–38 (D.D.C. 2023); In re N.Y. Times Co., 657 F. Supp. 3d 136, 156–57

(D.D.C. 2023), vacated on other grounds sub nom. Cheney, 2024 WL 1739096; In re Reps.

Comm. for Freedom of the Press, 2025 WL 92363, at *5 (D.D.C. Jan. 14, 2025).

 Politico nevertheless insists that when limited disclosures by the Government are

buttressed by widespread public reporting, secrecy protections around ancillary grand-jury

materials are abrogated.  See Reply at 3; App. Br. at 9–10.  This argument does not convince.  To

begin, "Rule 6(e) protections remain intact" absent any "reliable, credible, and authoritative

disclosures of grand jury matters."  Reps. Comm., 2025 WL 92363, at *6 (quoting N.Y. Times

Co., 657 F. Supp. 3d at 152).  Media disclosures are authoritative only when they implicate

details that have already been revealed by the witness or his attorney, by the Government, or in

official fora, such as judicial proceedings and reports to Congress.  Id. at *6; see also id. at *7

(noting "sustained or repeated" disclosures) (citing In re North, 16 F.3d at 1236–45).  Such

disclosures are not sufficiently reliable for purposes of Rule 6(e), by contrast, when the press has

merely "pieced together a narrative . . . from public documents and media reports based

primarily on unidentified sources" and the Government has declined to comment.  Id. (citing

Press App. Concerning Trump's Commc'ns, 687 F. Supp. 3d at 137–40).  That is the case here.

See App. Br. at 5 (citing two Politico articles discussed just below).  The Government is

therefore correct that, under Rule 6(e), only information that has already been revealed by an

official source may now be disclosed.

 In any event, the "extensive reporting" to which Politico points does not even reveal the

information the organization believes has been improperly redacted: the contents of Patel's

testimony and its role in the Special Counsel's investigation.  The organization adduces two

articles as examples of the "extensive reporting" on "Patel's role" in the grand jury.  See App.

Br. at 5.  The first expressly disclaimed any knowledge of Patel's actual testimony.  It instead

reported that Special Counsel prosecutors had "secured the testimony of Kash Patel, a former

Trump White House aide who had initially asserted his Fifth Amendment rights in a closed-door

grand jury appearance.  The Justice Department recently compelled his testimony with a grant of

limited immunity though it's unclear what of value, if anything, Patel has told them."  Kyle

Cheney & Josh Gerstein, 6 Reasons Why Trump's Already Bad Legal Troubles Are About to

Get Worse, Politico (Nov. 15, 2022), https://perma.cc/GM4Z-4ENY (emphasis added).  The

second article merely reported that DOJ had "delivered limited immunity to Trump aide Kash

Patel to compel testimony from him in its ongoing documents probe."  Josh Gerstein & Kyle

Cheney, New Trump Special Counsel Launches Investigation in Mueller's Shadow, Politico

(Nov. 18, 2022), https://perma.cc/PKH5-8UN3.

Politico's First Amendment argument is similarly infirm.  Simply put, "there is no First

Amendment right of access to grand jury proceedings."  Dow Jones I, 142 F.3d at 499.  The

same goes for ancillary judicial proceedings like the ones at issue in this litigation.  Under Rule

6(e), the press does not have a "'right of access to documents in ancillary proceedings,'

regardless of how newsworthy and significant such proceedings may be," as they still implicate

grand-jury-secrecy concerns.  Press App. for Trump's Commc'ns, 687 F. Supp. 3d at 140

(quoting In re Press App. for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc.

Concerning Former Vice President Mike Pence, 678 F. Supp. 3d 135, 140–42 (D.D.C. 2023));

accord Miller II, 493 F.3d at 154 ("[T]here is no First Amendment right of access to grand jury

proceedings, nor do First Amendment protections extend to ancillary materials dealing with

grand jury matters, such as [a judicial] opinion.") (quotation marks omitted).  The First

Amendment therefore does not entitle Politico to any disclosures beyond that permitted by Rule

6(e).  See N.Y. Times Co., No. 22-mc-100, Mem. Op. at 7–8 (holding same).

Disclosures by the Special Counsel and by Patel himself, however, do lift the secrecy

otherwise protecting grand-jury matters.  That is because "grand jury matters may lose their

protection if prosecutors publicly disclose them and they become 'sufficiently widely known,'"

In re Cheney, 2024 WL 1739096, at *3 (quoting In re North, 16 F.3d at 1245), or "if they are

disclosed by a witness before the grand jury."  Id. (citing Miller II, 493 F.3d at 154–155).  The

question thus becomes to what extent the Special Counsel's filing or Patel revealed the contents

of the documents that Politico seeks.

As explained above, the filing recounted the tug of war over whether Patel would testify,

but it did not reveal why the Special Counsel wanted him to testify or what he told the grand

jury.  It recounted that Patel contested his subpoena through a motion to quash but was ordered

to testify; that when he did so, he repeatedly invoked the Fifth Amendment; that the Special

Counsel moved to compel further testimony, a request the Court granted on the condition Patel

be offered statutory immunity; that Patel was granted statutory immunity; and that he

subsequently testified a second time.  See supra pp. 3–3.  In his congressional testimony, Patel

confirmed that he had appeared before the grand jury and invoked his Fifth Amendment rights

when doing so, but he steadfastly refused to provide any details about his testimony.  See id.  As

the Government rightly observes, then, neither the Special Counsel's filing nor Patel himself

revealed any details as to (a) the factual information the grand jury sought from Patel, (b) the

substance of his testimony, or (c) how the Government desired to use Patel's testimony for its

investigation.  See Gov't Resp. at 7.  The Government therefore asserts — correctly — that any

references to these matters in the records here must be redacted, see id. at 8, as "the substance of

testimony" and "the strategy or direction of [an] investigation" are grand-jury matters cloaked by

Rule 6(e).  See Bartko v. DOJ, 898 F.3d 51, 73 (D.C. Cir. 2018) (quotation marks omitted).

As a last-ditch effort, Politico urges the Court to give weight to the fact that, during his

confirmation hearing, Patel said he would "love [for his] grand-jury testimony to be released,"

Confirmation Hearing, Part 2, *supra* (video from 4:58–5:12), and apparently declined to reveal

the substance of his testimony based on the "mistaken" belief that he was not allowed to do so.

See Reply at 4.  In light of that, the news organization says, the Government must explain why

his testimony should not be made public.  See id.  Petitioner has the burden backward.  Absent

Government license to do so pursuant to Rule 6(e), such testimony must remain secret.

McKeever, 920 F.3d at 844–50.  And while that rule generally permits a grand-jury witness to

reveal the contents of his testimony, Butterworth, 494 U.S. at 634–35, wishing aloud that one's

testimony be made public is not the same as actually divulging it.  Politico is therefore mistaken

that Patel's musing suffices to pierce the secrecy shrouding his testimony.

B.      Scope of Redactions

Having determined the extent to which any grand-jury matters here have been stripped of

secrecy protections, the Court must determine whether the Government's proposed redactions

are sufficiently narrow.  It concludes that, in certain places, they are not.

The Government properly proposed redacting portions of the documents that reveal the

information the grand jury sought from Patel, see, e.g., ECF Nos. 14-4 (Sealed *Ex Parte*

Document #4) at ECF p. 4; 14-6 (Sealed *Ex Parte* Document #6) at ECF p. 3, or that disclose

how Patel fit into the Government's investigation.  See, e.g., Sealed *Ex Parte* Document #6 at

ECF pp. 5, 7; ECF Nos. 14-2 (Sealed *Ex Parte* Document #2) at ECF p. 4; 14-9 (Sealed *Ex Parte*

Document #9) at ECF p. 2; 14-14 (Sealed *Ex Parte* Document #14) at ECF pp. 2–4, 9–11.  So,

too, is it appropriate to redact sections that recount Patel's actual testimony.  For instance, while Patel and the Special Counsel have revealed that Patel invoked the Fifth Amendment, the Government proposes redacting sections that reveal the specific context in which he invoked it. See, e.g., Sealed *Ex Parte* Document #14 at ECF pp. 1, 5–7.

In other places, however, the redactions strike the Court as overbroad.  It provides here a few illustrative examples.  Consider first the Minute Order of October 11, 2022, that denied Patel's Motion to Quash.  See ECF Nos. 14-1 (Sealed *Ex Parte* Document #1) at ECF pp. 2–4; see also ECF Nos. 14-10 (Sealed *Ex Parte* Document #10) at 2–3 (reproducing minute order); 14-13 (Sealed *Ex Parte* Document #13) at 2–4, 6–7 (same).  In the second, third, and fourth paragraphs of the Minute Order, the Government proposes redacting this Court's predecessor's legal analysis of Patel's claims, including its analysis of the specific constitutional rights invoked by his Motion.  See Sealed *Ex Parte* Document #1 at ECF p. 3.  Such redactions appear extraneous for two reasons.  For one, the Special Counsel has already disclosed that in his Motion, Patel "argu[ed] that" being "requir[ed] . . . to appear pursuant to the grand jury's subpoena would violate his constitutional rights by depriving him of his counsel of choice." Attachment A at ECF p. 78.  In addition, the Government has not proposed redacting the portions of Patel's Motion that detail exactly what is redacted in the Minute Order.  See ECF No. 15-2 (Redacted Document #2) at 5 (objecting that "the subpoena would deprive [Patel] of rights guaranteed under the First, Fifth, and Sixth Amendments").  Likewise, the Government proposed redacting the Minute Order's discussion of a case that it did not redact in the Motion itself. Compare Sealed *Ex Parte* Document #1 at ECF p. 3, with Redacted Document #2 at 3 (citing In re Investigation Before Apr. 1975 Grand Jury, 531 F.2d 600 (D.C. Cir. 1976)).

Similarly, the Government has proposed redacting the entirety of the Minute Order of October 13, 2022.  See Sealed *Ex Parte* Document #1 at ECF p. 4.  That Order, however, appears to divulge matters already authoritatively disclosed — for example, the fact that the Government gave Patel a two-week extension and then, in an effort to accommodate his counsel, offered to let him testify on "Friday afternoons."  Attachment A at ECF p. 78.

Finally, consider the two *ex parte* Minute Orders of October 20, 2022.  See Sealed *Ex Parte* Document #1 at ECF pp. 5–6.  The Government was certainly correct to propose redacting the sentences in these orders that brush up against the topic(s) of Patel's testimony or the Special Counsel's interest in him.  Id.  But to the degree that those orders or others merely address what is already authoritatively disclosed — that Patel invoked the Fifth Amendment and was subsequently granted immunity — such information should not be redacted.

These examples, in short, suggest an insufficiently tight fit between the information the Government agrees may be disclosed and its proposed redactions.  It is therefore incumbent on the Government to propose more limited redactions or better justify the existing ones.

## IV.    Conclusion

For the foregoing reasons, the Court will (1) grant in part and deny in part Politico's Application, and (2) order the Government to submit reduced redactions or explain to the Court why the existing ones are appropriate in light of this Opinion.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: July 21, 2025